TENNESSEE ROADBUILDERS
ASSOCIATION et al.

v.

F. Ray MARSHALL, Secretary of
Labor, et al.

No. 77–3251–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Dec. 12, 1977.

Don L. Smith, Manier, White, Herod, Hollabaugh & Smith, Nashville, Tenn., for plaintiffs.

Hal D. Hardin, U. S. Atty., William H. Farmer, Asst. U. S. Atty., Marvin M. Tincher, Regional Counsel, Dept. of Labor, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

Plaintiffs, an association of highway contractors and two highway construction companies, bring this action on behalf of themselves and other Tennessee contractors sim-

ilarly situated. They complain that a minimum wage classification issued April 1, 1977, (42 Fed.Reg. 17,784 (1977)), by the Department of Labor pursuant to the Davis-Bacon Act, 40 U.S.C. §§ 276a–276a–5 [hereinafter "the Act"], is substantively in violation of the Act itself and procedurally in violation of defendants' own regulations promulgated under the Act. Alleging injury in the form of potentially higher labor costs and/or depleted labor markets, they ask this court to review the Secretary's determination, to enjoin him from promulgating the wage classification objected to, and to compel him to promulgate classifications consistent with the Act and pertinent regulations.

Following a hearing, this court denied plaintiffs' motion for a temporary restraining order. Defendants now move to dismiss on several grounds, including nonreviewability of minimum wage determinations under the Act, failure of plaintiffs to exhaust administrative remedies, and failure of plaintiffs to state a claim upon which relief may be granted.[1] Plaintiffs insist that defendants' determination of April 1, 1977, invokes exceptions to the general propositions supporting the first and second of these grounds, because, they allege, even if the action is within the letter of the Secretary's authority, it is an arbitrary and capricious abuse of discretion and one that will cause irreparable injury to plaintiffs if they are forced to pursue administrative remedies. For the reasons stated herein, the court regards plaintiffs' arguments on these points, as well as their contention that the Secretary acted beyond his authority, to be without basis. Once these issues are resolved in defendants' favor, there remains no claim upon which plaintiffs may be granted relief.

The Davis-Bacon Act, enacted in 1931 and as subsequently amended, provides for the establishment of minimum wages to be paid on federal and federally assisted

---

1. A fourth ground for dismissal offered by defendants is lack of standing. Although the court might be inclined to agree with plaintiffs on this issue under certain circumstances, it need not and does not reach this question in this case.

construction projects. The Act has been generally effective in achieving its purposes of protecting employees of government contractors from substandard wages and insuring that local laborers and craftsmen not be precluded from work on government projects by the importation of cheap labor from distant sources. *See United States v. Binghamton Construction Co., Inc.,* 347 U.S. 171, 176, 74 S.Ct. 438, 98 L.Ed. 594 (1954); S.Rep.No.963, 88th Cong., 2d Sess. ——, reprinted in [1964] U.S.Code Cong. & Admin. News, pp. 2339, 2340–41.

The Act provides in pertinent part that

The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the United States or the District of Columbia within the geographical limits of the States of the Union, or the District of Columbia, and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics *which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed,* or in the District of Columbia if the work is to be performed there; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work . . . at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics . . . . .

40 U.S.C. § 276a(a) (emphasis added). Pursuant to this authority the Secretary has formulated regulations entitled Procedures for Predetermination of Wage Rates, 29 C.F.R., Part 1 (1975). Two methods of making such predeterminations are provided in section 1.5 of these regulations. Under section 1.5(a) the contracting agency may request that a determination be made for the specific construction project on which it plans to advertise for bids. The "project wage determination" then issued remains effective only for 120 days unless extended. Pursuant to section 1.5(b) the Secretary may issue "general wage determinations" by geographical area and for various labor classifications. The contracting agency may then refer to the applicable general determination instead of requesting a project determination. General determinations are published in the Federal Register and contain no expiration date, though they must be kept current through timely modification.

In making general wage determinations for the State of Tennessee, the Department of Labor uses four categories to classify construction work: (1) building construction (exclusive of single family homes and garden-type apartments up to and including four stories); (2) single family homes and garden-type apartments up to and including four stories; (3) heavy, water sewer and utility construction; and (4) highway construction. The gravamen of plaintiffs' complaint is that certain types of construction, specifically airport runways and taxiways, bridges over navigable waters, tunnels, rest areas that include buildings, and railroad construction supplemental to highway work, have been removed from the general category of highway construction (where they allegedly have been for the past thirty years) and are therefore no longer covered by the general wage determinations for that category.

Plaintiffs' argument that this change was made in violation of statutory authority is based on an erroneous interpretation of the pertinent language of the Act. They stress that "the Secretary of Labor is to determine the prevailing wage 'for the corresponding classes of laborers and mechanics employed on projects of a *character similar*

to the contract work in the city, town, village or other civil subdivision of the State in which the work is to be performed. . . . .' 40 U.S.C. § 276a [emphasis supplied by plaintiffs]." *Plaintiffs' Reply Brief to Motion to Dismiss* at 1. They assert that therefore "the Secretary must follow the statutory mandate to apply the same rate to corresponding classes of laborers on projects of a similar character." *Id.* at 2. And in their amended complaint plaintiffs urge that

> [W]ithout exception, airport runways and taxiways; bridges over navigable waters; tunnels; rest areas which include building structures; and railroad construction supplemental to highway work is [sic] more similar and akin to highway construction than to any of the other categories, namely: (a) Building Construction; (b) Single Family Homes and Garden-type apartments; (c) Heavy, Water, Sewer and Utility Construction; and until promulgation of the Federal Register, Vol. 42, No. 63—Friday, April 1, 1977, such had been included within the Highway Construction classification.

*Amended Complaint* at 3. Plaintiffs summarize their position by stating that

> The Davis-Bacon Act utilizes four basic categories under which construction is to be classified. Rules and regulations under the Act require that the wage determinations be made within the most similar category. The exclusion being contested herein excludes specific construction activities which are very similar to highway construction from the "Highway Construction Category." The resulting classification is accordingly not in accord with the Davis-Bacon Act and is thus arbitrary, having no rational basis.

*Plaintiffs' Reply Brief to Motion to Dismiss* at 6, 7.

The court would note at the outset that the Act itself does not "utilize" the four categories of construction labor, much less require the Secretary to classify any particular type of construction under any certain category. Indeed, these categories are not even prescribed in regulations promulgated under the Act, but are apparently a reflection of historical patterns within the construction industry. *See Nello L. Teer Co. v. United States,* 348 F.2d 533, 534, 172 Ct.Cl. 255 (1965).

There is no requirement under the Act or the regulations that construction projects be classified under the one of the four categories containing other "similar" construction, for there is no requirement that any projects be subject to general wage determinations at all (or that, as stated above, the four categories be used when general determinations are made.) Whether a bridge is more similar to a highway than to heavy construction simply is not the question. The "character similar" language upon which plaintiffs build their case requires only that the Secretary's determination reflect the similarity of the labor to be performed under government contracts to other labor being performed in the locality, not to other types of work on government projects. In other words, the minimum wages determined for laborers on bridges of a certain size must be the prevailing wages paid to laborers on similar bridges in the local area. If laborers on such bridges are paid different rates than are laborers on adjacent highways, then the Secretary's wage determinations must also differentiate between laborers on such bridges and highways, but whether to make determinations for either on a general or project basis is clearly within the discretion of the Secretary. This court therefore holds that the Secretary's ruling published April 1, 1977, was not made in violation of provisions of the Davis-Bacon Act.

■ This court further holds, for reasons that follow, that the Secretary's determination did not constitute a violation of regulations promulgated under the Act. Plaintiffs contend that defendants failed to follow the procedure set out in 29 C.F.R. § 1.3(b), which requires that certain types of information be considered in making wage rate determinations. Plaintiffs' position is at best premature, for excluding certain types of construction from the general category of highway construction is *not*

a wage rate determination, but is merely a decision either to make such determinations on a project rather than a general basis or to reclassify all or some of them for general determination. If the Secretary fails to follow the procedure of 29 C.F.R. § 1.3(b) before changing the wage rates applicable to the types of construction at issue in this case, either by project determination or by reclassification under different categories subject to general determination, plaintiffs might then have grounds to complain. Whether they could do so in court without first having exhausted administrative remedies is highly doubtful, for reasons discussed later in this opinion.

 Assuming that the wage rate determinations for the types of construction now excluded from the highway construction category are made in compliance with the Act and with regulations, the determinations themselves, unquestionably within the Secretary's discretion, will not be subject to judicial review. *See, e. g., United States v. Binghamton Construction Co.,* 347 U.S. 171, 177, 74 S.Ct. 438, 98 L.Ed. 594 (1954). In 1964 Congress expanded the scope of the Davis-Bacon Act to cover fringe benefits in addition to cash wages. At that time a proposal to amend the Act to provide for judicial review of all wage rate determinations was overwhelmingly rejected as "simply not practical" and as having the potential to "frustrate the entire program." Problems foreseen included a flood of litigation, delays in the construction of important government projects such as vital defense installations, and court decisions rendered on outdated determinations. See S.Rep.No. 963, 88th Cong., 2d Sess. ——, reprinted in [1964] U.S.Code Cong. and Admin.News, pp. 2339, 2342. While recognizing the need for some form of review, the Senate Report expressed confidence that the Wage Appeals Board could provide "the necessary procedural protections for interested parties, without impeding the operation of our construction programs." *Id.* at 2343.

Ironically, plaintiffs' argument that they are entitled to bypass administrative review in this case is based on the assumption that *judicial* speed is the antidote to *administrative* sluggishness. Without further comment of its own, this court would note that congressional wisdom on this point cannot be gainsaid, at least where wage rate determinations themselves are concerned. And in the instant situation, even if plaintiffs' belief in court celerity could be justified, they have failed to substantiate their claim that the alleged administrative delay will be such as to warrant court intervention. Citing *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir. 1972); *Bristol Myers Co. v. FTC,* 469 F.2d 1116 (2d Cir. 1972); and *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817 (2d Cir. 1967), they assert that immediate action is required to prevent them from suffering irreparable harm by being forced to submit bids "based on work projects that have been arbitrarily excluded from the general 'Highway Construction Work' classification . . . ." *Plaintiffs' Reply Brief to Motion to Dismiss* at 5. Although the bid openings that loomed before plaintiffs at the time they filed this action have since passed, apparently without inflicting the feared harm on plaintiffs,[2] they insist that the issue is not mooted because "there continue to be other bid openings where the same problem exists." *Id.* at 5. The problem predicted by plaintiffs appears to be that they will be forced to bid without knowing what rates will apply. *Transcript of Proceedings,* June 6, 1977, at 22. Defendants' regulations, 29 C.F.R. § 1.7(b)(1), (2) (1975), provide that modifications in wage rate determinations must, to be effective, be received by the contracting agency in the case of project determinations or be published in the Federal Register in the case of general determinations no later than ten days before the

---

**2.** Testimony at the TRO hearing indicated that project determinations had been or were soon to be issued in advance of the bid openings in question. It further appeared that the rates set by these particular determinations were, in

fact, the same as would have applied under the general determination for highway construction. Transcript of Proceedings, June 6, 1977, at 14, 43.

opening of bids unless the agency finds that there is a reasonable time in which to notify bidders of such modifications. Plaintiffs have not alleged that these regulations have already been violated, and this court cannot assume that they will be.

In view of this court's holdings that defendants' determination of April 1, 1977, 42 Fed.Reg. 17,787 (1977), constituted neither a violation of the Davis-Bacon Act nor a violation of 29 C.F.R. § 1.3(b), plaintiffs have failed to state a claim upon which relief may be granted.

An appropriate order will be entered.