Personnel Commission.
No. 4552.

CHARLES S. WINN & a.

v.

JOHN W. JORDAN & a.
NEW HAMPSHIRE PERSONNEL COMMISSION.

Argued April 2, 1957.

Decided June 20, 1957.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Green* orally), for the plaintiffs.

*Louis C. Wyman*, Attorney General, *Elmer T. Bourque*, Assistant Attorney General, and *Arthur E. Bean, Jr.*, Assistant Attorney General (*Mr. Bourque* orally), for the defendants.

DUNCAN, J. Legislation adopted in 1950 provided for the classification of salaries and positions of state employees. Laws 1950,

*c.* 9. See also, Laws 1950, *c.* 5, part 25. The act called for establishment of a Personnel Commission and defined its duties, one of which was to establish a classification plan which should include the principles recommended by the Governor's Advisory Committee on Reclassification. RSA 98:3, 8 IV.

RSA 98:14 provides: "Any employee affected by the allocation of a position in a classification shall, after filing with the director of personnel a written request for reconsideration thereof, be given a reasonable opportunity to be heard thereon by the director; any employee who is dissatisfied with the ruling of the director shall have a right of appeal to the commission." RSA 98:15, immediately following, provides for appeal to the Commission by any employee who is dismissed, demoted or suspended, upon which there shall be a right to public hearing; and any action or decision thereon is made subject to "rehearing and appeal as provided in chapter 541 of the Revised Statutes Annotated."

It is not disputed that the pending proceedings are governed by section 14, *supra,* of the act, and the parties were in agreement at the arguments that no appeal lies from this decision of the Personnel Commission because none is "authorized by law." RSA 541:2. *Petition of Dondero,* 94 N. H. 236. *Cf.* RSA 98:15, *supra.* Although the plaintiffs have mistaken their remedy, our practice permits consideration of their petition as one for writ of *certiorari,* entitling them to the limited determination of whether the Commission has acted "illegally in respect to jurisdiction, authority or observance of the law." *Cloutier* v. *State Milk Control Board,* 92 N. H. 199, 203; *Goldsmith* v. *Kingsford,* 92 N. H. 442, 444. Upon this assumption, the plaintiffs have urged that this court should either prescribe the reclassification which they seek or in the alternative require that the Commission reconsider their appeal for the purpose of making express findings with respect to their requests.

The law is settled that it is not open to this court to make findings *de novo,* or to revise those made by the Commission. *Opinion of the Justices,* 98 N. H. 533, 536, and cases cited. This is peculiarly so in this case because the manner of classification of positions of state employees is "purely an administrative matter for the . . . commission to decide." *McDonald* v. *City Manager of Fall River,* 273 Mass. 368, 371. It is not contended in these proceedings that the services performed by individual employees do not properly come within the classified positions governing their pay. The issue is solely one of whether the duties and responsibilities of the positions have been properly evaluated in determining

the labor grade assigned to the positions. "Ordinarily the exercise of such a function is executive or administrative in its nature, rather than judicial." *Curry* v. *Civil Service Commission,* 125 Conn. 344, 346, note; *Matter of Simons* v. *McGuire,* 204 N. Y. 253; *Cicotte* v. *Damron,* 345 Mich. 528, 535; anno. 134 A. L. R. 1103, 1106. Hence it is doubtful that this court could properly make the classification sought by the plaintiffs even if an appeal were authorized by the statute. See *Howe* v. *Civil Service Commission,* 128 Conn. 35, 40.

A fundamental precept in the proper classification of positions calls not only for consideration of the duties of a particular position, but also of the relative duties of other comparable positions involved in the plan. RSA 98:13 XIII. As is pointed out in Position-Classification in the Public Service, (Civil Service Assembly 1942) *p.* 320: "The analysis of the position presented for review, its evaluation as to kind and level of work, the applicability of class specifications, the comparative analysis of other positions, the allocation of the position to its proper class, the propriety of establishing a new or changing an existing class, the determination of the characteristics of a new or changed class in relation to existing classes — are all technical questions which are embraced in deciding the action to be taken . . . One of the first and most important lessons that any classification staff has to learn is that a classification plan is an integrated structure, all the parts of which are connected and deserve attention when a change is contemplated in any one of them." For these reasons the Legislature properly confided the duty of making a final determination to the Commission, which under the statute was given the responsibility of establishing the plan in the first place, and of revising it "from time to time." RSA 98:8 IV, *supra.*

The only question for this court to determine is whether in the exercise of its classification powers the Commission has abused its discretion by arbitrary, unreasonable or capricious action. *Carls* v. *Civil Service Commission of New Jersey,* 17 N. J. 215, 221; *Howe* v. *Civil Service Commission, supra; Sippell* v. *Dowd,* 76 N. Y. S. (2d) 440, 447, *aff'd* 86 N. Y. S. (2d) 478. See *Powell* v. *Fuller,* 96 N. H. 322.

It is argued that the evidence before the Commission, which came solely from the plaintiffs, conclusively established their rights to the classification sought; and that the absence of any findings by the Commission with respect to the issues presented requires that the case be remanded with instructions to make the findings necessary to disclose the basis of the decision.

These arguments do not seem to us to merit acceptance. As previously indicated, the matter of classification is one resting in the sound discretion of the Commission. It is apparent that the Commission did make findings and that they are disclosed by consideration of the action taken. This may be illustrated by reference to the disposition made by the Commission of but one of the factors with respect to which the plaintiffs assert that the classification was erroneous. Review of the action with respect to other factors in issue will show that findings were similarly made as to them.

The plaintiffs sought to have the factor "personal relationships" for the position of case worker upgraded from the third to the fifth degree. Six degrees are provided for this factor by the plan. The third degree is defined by the plan as follows: "Work involves contacts with persons giving or obtaining information requiring tact to avoid friction. Included would be contacts required in supervising others on closely related work, or frequent contacts with other units or departments in the normal course of performing duties." The fifth degree sought by the plaintiffs is defined as follows: "Work involves contacts for purposes of giving or obtaining information on matters of policy, and requires tact for obtaining assistance, support, or acceptance where improper handling may adversely affect operating result of the department and its relations with other agencies."

The Commission declined to assign the latter degree to the position of case worker. As was pointed out at the arguments, and appears from the current "salary and job evaluation" chart covering all positions, the fifth degree has been assigned to the position of Assistant Commissioner of Public Welfare, a position in the department above that of the immediate superior of a case worker. The Commission instead assigned to the position of case worker, a new rating of fourth degree which the plan defines as follows: "Work involves contacts with persons requiring considerable discussion of problems, presentation of material, and obtaining cooperation, such as is necessary for those in advanced supervisory positions and contacts made outside the department."

The finding of the Commission with respect to the factor of "personal relationships" for the position of case worker are thus quite capable of ascertainment from the record. We see no occasion to require further consideration of this issue by the Commission, but are satisfied that its action has not been shown to involve abuse of discretion.

With respect to the other errors urged by the plaintiffs we are brought to the same conclusion. The action of the Commission falls within its statutory discretion even if different conclusions might also have been sustainable. The plaintiffs' evidence is not so conclusive as to demonstrate a plain error in judgment, suggestive of arbitrary action. To require as a matter of law that the findings of the Commission should be made in greater detail than is available by reference to the classification plan and related schedules would impose upon it the burden of justifying its judgment by specific comparisons with numerous other positions included in the plan.

This appeal illustrates, however, a consideration urged by most texts dealing with the administration of such plans, that: " 'Ivory Tower' classification, keeping it a mystery for an anointed few, cannot win the acceptance necessary to impartial, honest job analysis and evaluation." Mosher, Kingsley and Stahl, Public Personnel Administration (3rd *ed.*) 1950, *p.* 238. Differently stated by Torpey, Public Personnel Management (1953) *pp.* 63, 64: "Gaining and retaining confidence of both employees and supervisors must continue to be an objective of every classification plan . . . . Accessibility of . . . class specifications promotes greater understanding of allocation standards and negates erroneous beliefs about the classification system." See also, Final Report of the Governor's Advisory Committee on Reclassification (January 31, 1950) *pp.* 10, 11, 34, 35.

In future cases such as this, where employees rely upon a supposed similarity with other classified positions, some explanation by the Commission in its decision of the basis for distinguishing one position from another might go far to eliminate misunderstandings and the prosecution of needless appeals. In the alternative, following the practice sometimes utilized by the Public Utilities Commission, such differences might be exposed by testimony of the Director received in evidence before the Commission.

We cannot say as a matter of law that the record in this case establishes arbitrary or illegal action by the Commission, and the order is

*Petition dismissed.*

WHEELER, J., took no part in the decision; the others concurred.